MARTIN *et al. v.* RALEIGH STATE BANK.*

(Division B.   Feb. 28, 1927.)

[111 So. 448.   No. 26316.]

1. ESTOPPEL.   *Title reacquired by grantors after foreclosure of first deed of trust inures to beneficiary of second deed of trust subordinate to first.*

Where a property owner gives a deed of trust reciting on the face of it that it is a second deed of trust and subordinate to a prior existing deed of trust, and where the foreclosure of the first deed of trust is had and the property purchased by a third person, and through mesne conveyances is reacquired by the grantors, the title so reacquired inures to the beneficiary of the second deed of trust.

2. MORTGAGES.   *Failure to make holder of deed of trust by original grantors purchasing after foreclosure party to suit by beneficiary of second deed of trust against original grantors does not affect his rights.*

Where a holder of a third deed of trust on property purchased from a party who had purchased the legal title at the foreclosure sale of the first deed of trust and resells to the original grantors, taking a deed of trust to secure the purchase money, and a suit is filed against the original owners by a beneficiary of the second deed of trust to get possession of the premises upon which the deeds of trust were given, the holder of the last deed of trust given by the original grantors is not a necessary

(1)

party to such suit, and the rights of such party are not affected when he is not made a party thereto.

3. ESTOPPEL. *Mortgages. Second mortgagee has no duty to pay first mortgage or bid at foreclosure sale; right of second mortgagee is not affected by foreclosure of first mortgage, where original grantor subsequently acquired title.*

Where a second mortgagee takes his mortgage subject to a prior one, and his mortgage recites the existence of a prior mortgage, and provides that the second mortgage is subject to the first, the second mortgagee is under no duty to the grantor to pay off the first mortgage, or to appear at the sale and bid thereon. The grantor in the second deed of trust in such case is under duty to discharge the first mortgage when it is due, and the right of the mortgagee against the mortgagor is not affected by the sale where the original grantor subsequently acquired title to the property so sold.

*Corpus Juris-Cyc. References: Estoppel, 21CJ, p. 1079, n. 9 New; p. 1082, n. 29; p. 1084, n. 54. Mortgages, 41CJ, p. 618, n. 88 New; 27Cyc, p. 1700, n. 54.

APPEAL from chancery court of Simpson county. Hon. T. P. DALE, Chancellor.

Suit by the Raleigh State Bank against E. B. Martin and others to secure possession of certain land. From an adverse judgment, defendants appeal. Affirmed.

*R. C. Russell,* for appellants.

I.   Certainly it cannot be said that this was after-acquired property when it was included in the deed of trust. No one ever contemplated or made any such contract, and the after-acquired property clause in the deed of trust was never intended to cover the after-acquiring of the property therein embraced, when the property was sold according to the terms of the deed of trust, and this is true whether it was sold under that particular deed of trust or not, since it was sold under or by any lien or contract that was contemplated by or mentioned in the deed of trust. Furthermore, it was not a question of buying an outstanding title to the land adverse to

appellee's, because it took the deed of trust subject to
this deed of trust of Foreman, and the after-acquired
property. clause was, therefore, written out of appellee's
deed of trust so far as it applied to the property there-
in embraced in the hands of anyone claiming through
the Foreman deed of trust.

II.   It is contended that appellee should have appeared
at the foreclosure sale of the land made under the Fore--
man deed of trust and bought it, or made it bring its
value at this foreclosure sale, which would have been
about four thousand dollars according to the testimony.

This was the intention of taking a second lien, to make
the land pay both debts, and appellee knew this when it
took this second deed of trust, that it might be neces-
sary either to pay off the Foreman indebtedness, buy it
in at the Foreman sale, or make it bring enough to pay
both debts or bring its value at least, and this was ap-
pellee's remedy, but it owed that much to appellants to
take care of their property.   When it failed to do this,
it certainly has not much standing in a court of equity.

III.   Another ground of the demurrer challenges the
amended bill on the ground that Mims Williams with a
prior deed of trust for the full value of the land was
not made a party to the suit.   He certainly was a neces-
sary party to the suit, because he has an admitted prior
lien on the land for more than the land has ever brought
at public or private sale.   *Yates et al.* v. *Council et al.,*
102 So. 176; *Rodd* v. *Durbridge,* 53 Miss. 694; *Champlin*
v. *McLeod,* 53 Miss. 484; and *Whitney* v. *Cotton,* 53 Miss.
689.

IV.   We contended in the court below and assert here
that when appellee accepted their deed of trust with
the written provision therein that it was a second deed
of trust on the land, that this exception wrote the gen-
eral warranty clause out of appellee's deed of trust, so

far as the rights of any person claiming under the first deed of trust are concerned. See 27 Cyc. 1503, article 2, and citations thereunder.

V. After appellants had excepted this land in appellee's deed of trust from the prior rights under the senior deed of trust, they had as much right to come finally into the possession of it as anyone else. *Huzzey* v. *Hefferman*, 143 Mass. 232, 9 N. E. 570. Our own state has never decided a case similar to the one here under consideration, so far as we have been able to find.

VI. Our ninth assignment challenges the chancellor's decree for granting a writ of possession without first requiring appellee to discharge Williams' prior lien. See *Hawkins* v. *Harlan*, 68 Cal. 236, 9 Pac. 108.

VII. We contend, finally, that the decree in its present form impairs the obligation of a contract, in this, that Williams' contractual rights are superseded, and that too without giving him a hearing, or preserving his contractual rights. 8 Cyc. 1002; *F. T. Leak* v. *W. W. Cook*, 52 Miss. 799; and *Hazard et al.* v. *I. C. R. R. Co.*, 7 So. 280.

VIII. The court should give judgment here for appellants as they are not claiming through any title or rights that they had, in their junior lien to appellee, covenanted to defend; but, on the contrary, they expressly covenanted in their junior mortgage not to defend against the title through which they are now claiming their rights to purchase the land. *Vary* v. *Smith et al.*, 50 So. 187; *McInnis* v. *Pickett et al.*, 3 So. 660.

*Hughes, Nobles & Lane*, for appellee.

I. Counsel contends that Mims Williams should have been made a party to this suit, or that appellee should

have been required to do equity by tendering the purchase price of the land to Williams. This position of counsel is not correct.

Appellee recognized Williams' purchase money lien and asked only that it be declared the owner of the land subject to this purchase money lien. The court so decreed. If this case should be affirmed by this court, Mims Williams would be in exactly the same *status* he was in the day he sold the land to W. T. and E. B. Martin and took the deed of trust for the purchase money.

II. There runs through appellants' brief the suggestion that appellee was guilty of laches in that it did not appear at the trustee's sale when the senior deed of trust was foreclosed, and, again, that it did not close out the deed of trust assigned to it by the Martin boys, known as the Patterson deed of trust. We cannot understand just how appellants can be heard to argue laches in this case when they failed to meet any of their contracts or obligations.

III. The greater number of the assignments of error go to the main proposition that appellee acquired no title to the land in question. Or to state it differently, appellants could buy the outstanding title and set it up in derogation of appellee's title. In arguing the demurrers to this case and in arguing the case on its merits, the question as to whether or not when appellants bought the outstanding title from Mims Williams it inured to the benefit of appellee, was the principal proposition argued and considered.

It is well settled in Mississippi that where one makes a warranty deed to property and afterward buys in an outstanding title it *eo instante* vests in the grantee. Section 2271, Hemingway's Code; 19 R. C. L., page 394, sections 169, 170. So, we submit, that the appellants could not make and execute a second deed of trust on the land in question and permit the lands to be sold

under the first deed of trust to Foreman and then buy in the outstanding title thus conveyed through Foreman's trustee and assert this adverse title.

Appellants insist that the writing in to the deed of trust that it was a second deed of trust wrote out of it any warranty. In the first place, we do not agree that this was done. The actual facts made the contract and fixed the liability of the several parties in the two deeds of trust. Now as to whether or not the grantor could buy in the title to the property from and through the senior deed of trust and set it up against the appellee, see: *Harris* v. *Byers,* 112 Miss. 660, 73 So. 614; *Bush* v. *Cooper,* 26 Miss. 599.

In the case at bar there was a conveyance and a warranty of the entire fee. But counsel says the warranty was written out of the deed of trust when the words showing that it was a second deed of trust were written in. This we do not at all concede, but seriously contend that the warranty clause had the same force and effect between the appellants and the appellee as though there had been no senior deed of trust. However, let us see what would be the effect with the warranty written out. Section 2320, Hemingway's Code, provides: "A conveyance without any warranty shall operate and transfer the title and possession of the grantor as a quitclaim and release." Section 2271, Hemingway's Code, estops one conveying by quitclaim and release from asserting a subsequently acquired title to the land conveyed. So, in either case, appellants are estopped to set up this after-acquired title against the title of appellee.

ETHRIDGE, J., delivered the opinion of the court.

The Raleigh State Bank, appellee herein, filed its bill in the chancery court of Simpson county, setting up that the appellants E. B. Martin, W. T. Martin, and Emma Martin were the original owners of certain lands involved in this suit, and that they borrowed certain money

from George M. Foreman & Co., for which they gave
said company a deed of trust as security for the loan,
the said deed of trust being properly recorded; that sub-
sequently E. B., W. T., and Emma Martin borrowed cer-
tain other sums of money from the appellee and gave it a
deed of trust on the same land, and wrote in the face of
this deed of trust that it was a second deed of trust on
the land involved in this suit; that subsequently the said
E. B., W. T., and Emma Martin gave Mims Williams a
third deed of trust on the land involved in this suit; that
the said appellants failed to pay the loan procured from
George M. Foreman & Co., and the trustee in that deed of
trust foreclosed it on the 7th day of July, 1924, to satisfy
this indebtedness; that at said sale one W. P. Kent
purchased the said land; that appellee did not appear at
this sale and bid on same or take any steps whatever to
protect its interest in the land, but permitted it to be
sold. Neither did the appellee offer to pay off the said
Foreman deed of trust, which was superior to its deed
of trust. After the sale was made, as above stated, Kent
conveyed the title to the land purchased at the trustee's
sale to Mims Williams, who afterwards sold the said
land to the appellants, taking a deed of trust thereon for
the purchase money, which included the deed of trust
formerly given to Williams and the amount of money
which he had paid to Kent for his (Kent's) title. After
these transactions had taken place, and after the ap-
pellants had reacquired the property, as above stated,
the appellee caused its trust in its deed of trust to be
foreclosed and at a sale thereof bought the land and filed
suit against the appellant, among other things, to secure
possession of same.

The appellants first demurred to the bill, which de-
murrer was overruled, and then answered setting up
that by virtue of the clause in the appellee's deed of trust
reciting that it was a second deed of trust and subordi-
nate to the Foreman deed of trust, and that appellee
failed to pay off the Foreman deed of trust or appear

and buy in the land at the sale therein, that thereby ap-
pellee lost its rights to proceed against the land, and
that as the appellants had purchased the said land
through the chain of title resulting from the Foreman
sale under that deed of trust, that appellee had lost its
rights to proceed against the lands.

Appellants also contend that it was the duty of the ap-
pellee to discharge the superior lien to protect the prop-
erty, and that it should not by its foreclosure of its
deed of trust prevail over the rights of the appellants
acquired as above stated. It was also set up by way of
plea that Mims Williams should be made a party there-
to, and it is now contended that it is error for the court
to render the judgment it did without Williams being
made a party to the lawsuit and without declaring the
amount due Williams under his last deed of trust.

The court sustained the prayer of the bank, the ap-
pellee, as against appellant, but saved Williams' rights
under his deed of trust, declaring the right of the bank
to be subordinate to that of Williams under the last deed
of trust, but failed and refused to fix the amount of Wil-
liams' deed of trust.

The appellants rely upon *Huzzey* v. *Heffernan,* 143
Mass. 232, 9 N. E. 570, wherein that court held that where
a grantor, in giving a second mortgage, excepted from
his warranty the first deed of trust and those acquiring
title thereunder, and where afterwards the grantor re-
acquired the title to the property through foreclosure and
*mesne* conveyances subsequent to the foreclosure to the
original grantors, there was no estoppel because of the
exception in the mortgage stated above. Appellants also
rely upon *McInnis* v. *Pickett,* 65 Miss. 354, 3 So. 660.
In this case, the record showed, and it was admitted by
the parties, that William Kirkwood, deceased, was a
common source of title and owned at his death the land
in controversy. In September, 1848, Henry Kirkwood
conveyed all of his interest in his father's estate to W. R.
and Alexander Kirkwood. In February, 1849, Nancy

Pickett (*née* Kirkwood) executed a deed to Alexander Kirkwood, reciting that she thereby conveyed "all the right, title and interest I have in the estate of my father." William R. Kirkwood died in 1854, and Margaret Well (*née* Kirkwood) some time thereafter. Neither of them were married or left any issue. It was held by the court that this title conveying all of her right, title, and interest in the estate of her father did not prevent her subsequently from acquiring through inheritance, and that any title she might, subsequently to her conveyance, acquire to the estate of her father, would not inure to the benefit of her former grantee. The court, in its opinion, stated:

"The conveyance by the plaintiff of all her 'right, title and interest in the estate of her father, deceased,' did not estop her from asserting her title by descent cast upon her by the subsequent death of a brother or sister who were coheirs with her to her father. Any title she might subsequently to her conveyance acquire to the estate she conveyed would by our statute inure to her grantee, and she could not assert it.

"The estoppel is coextensive with the estate, right or interest which the conveyance purports to pass. It did not purport to convey an estate which the grantor might at a future day derive by descent from her coheirs."

In the case of *Bramlett* v. *Roberts*, 68 Miss. 325, 10 So. 56, this court held that under section 1195, Code of 1880, a quitclaim deed of land passes all the interest the grantor has in the land conveyed and estops the grantor and his heirs from asserting a subsequently acquired adverse title to the lands conveyed. Judge Campbell delivered a short opinion, which reads as follows:

"We recognize the doctrine that the estoppel of a conveyance of land is only 'coextensive with the estate, right or interest, which the conveyance purports to pass,' as held in *McInnis* v. *Pickett*, 65 Miss. 354 [3 So. 660], but the conveyances by Bramlett were not restricted to an estate less than the entire half interest conveyed by

each. He conveyed a half interest in the land by one instrument, and the other half by the other. The reference in the conveyance to the sheriff's deed to him conveying the lands was for purpose of description of the lands, and not a particular interest conveyed. The sheriff's deed purported to vest in him a fee simple, and his conveyances must be held to have been intended to pass a like estate. Therefore, any title to these lands subsequently acquired by him inured to and vested in his grantee, by virtue of section 1195 of the Code.''

In the case of *Edwards* v. *Hillier,* 70 Miss. 803, 13 So. 692, the court held that where one, owning only an undivided interest in the land, conveys it by a deed purporting to pass the entire interest, and afterwards acquires the interest of his co-owner, the title thus acquired inures *eo instanti* to his grantee; and it makes no difference that his deed to the purchaser contained a misdescription of the land, this having meantime been corrected by decree of the court.

In the case of *Leflore County* v. *Allen,* 80 Miss. 298, 31 So. 815, the court held that under section 1235, Code of 1880, providing that a conveyance without warranty shall operate as a statutory quitclaim and release, and section 1195 of the same Code, that a quitclaim and release shall estop the grantor and his heirs from asserting a subsequently acquired title to the lands conveyed, a deed without warranty, in which a husband unites with his wife in conveying lands owned by her, will estop the husband and his heirs from asserting title to any interest therein which he may subsequently inherit from her; the word, ''acquired,'' as used in the statute, relating to acquisition by descent as well as other methods.

Under these authorities, we think the doctrine of the Massachusetts court is not applicable in this state, and that the title which the appellants acquired from Williams, subsequent to the giving of the deed of trust to the appellee, inures to the benefit of the beneficiary in the second deed of trust, and that the court was correct

in so holding, and that Williams was not a necessary party to the suit. The appellee had the right under its foreclosure sale to the possession of the property as against the rights of the appellants, and the defendant Williams would not be affected by a decree to any suit to which he was not a party, had the court not expressly reserved his rights. As the court did expressly reserve his rights and make his lien superior to the title of the appellee, he was not in any manner injured, and the appellants' right was not affected, as they could not assert Williams' rights for him. It follows from the foregoing views that the judgment must be affirmed.

*Affirmed.*