RALEIGH STATE BANK *v.* WILLIAMS.*

(Division B.    May 7, 1928.    On Motion to Correct Judgment and on Suggestion of Error  June 11, 1928.)

[117 So. 365.    No. 27078.]

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 1247, n. 34; Evidence, 22CJ, p. 1162, n. 67; Landlord and Tenant, 35CJ, p. 952, n. 9, 13; Mortgages, 42CJ, p. 245, n. 86; On admissibility of parol evidence to show want or failure of consideration, see annotation in 20 L. R. A. 101; 25 L. R. A. (N. S.) 1194; 10 R. C. L. 1042; 2 R. C. L. Supp. 1144; 4 R. C. L. Supp. 688; 5 R. C. L. Supp. 587.

*Hughes, Nobles & Lane,* for appellant.

*Hilton & Hilton,* for appellee.

ANDERSON, J.   Appellee, Mims Williams, filed the bill
in case in the chancery court of Simpson county against
appellant, Raleigh State Bank, and W. T. and E. B. Mar-
tin, to foreclose a deed of trust on certain lands in Simp-
son county described in the bill, which deed of trust had
been executed by the Martins, in appellee's favor, on
February 9, 1925.   Appellant, Raleigh State Bank, an-
swered the original bill, making its answer a cross-bill.
In its answer it denied some of the material allegations
of the original bill, and made its answer a cross-bill, by
which it sought to recover of appellee something over
two thousand dollars as rents for the lands involved for
the years 1925 and 1926.   The case was tried on original
bill, answer, and cross-bill of appellant, Raleigh State
Bank, appellee's answer to the cross-bill, and proofs,
resulting in a decree granting appellee substantially the
relief prayed for in the original bill, and denying ap-
pellant, Raleigh State Bank, the relief it prayed for in
its cross-bill.   From that decree appellant, Raleigh State
Bank, prosecutes this appeal.   The Martins did not join
in the appeal.   On November 30, 1919, and for some time
prior thereto, the Martins owned the lands upon which
appellee held the deed of trust which he sought to fore-
close by the original bill in this cause.   On that date the
Martins executed a deed of trust in favor of Geo. M.
Foreman on said lands to secure an indebtedness of
three thousand dollars to Foreman.   On February 27,
1922, the Martins borrowed from appellant two thou-
sand two hundred eighteen dollars and twenty-eight cents,
securing the payment of the same with a second deed of
trust on the lands involved.   Still later the Martins bor-
rowed from appellee the sum of one thousand three hun-
dred ninety dollars, and, to secure the amount, executed
a third deed of trust on said lands.   The Martins made
default in all three of these deeds of trust.   On July 7,
1924, the Foreman deed of trust, which was the senior
of the three named, was foreclosed under power of sale

therein, for the purpose of satisfying the indebtedness thereby secured. At that sale W. P. Kent became the purchaser of the lands for three thousand three hundred twenty-seven dollars and forty cents, and received a deed in due form from the trustee making the sale. On January 10, 1925, appellant's deed of trust on the land was foreclosed by sale through a substituted trustee under power of sale contained therein, at which foreclosure sale appellant became the purchaser of the land for two hundred fifty dollars, receiving the trustee's deed therefor in due form. On December 31, 1924, appellee purchased the lands from W. P. Kent, and received a deed thereto from Kent. On February 9, 1925, the appellee conveyed the lands to the Martins in consideration of three thousand five hundred dollars; and on the same day and as a part of the same transaction the Martins executed a deed of trust on the lands and crops to be raised thereon, and on other personal property, to secure an indebtedness to appellee described in the deed of trust as follows:

"Fifty-eight hundred and fifty & no/100 dollars evidenced by their two promissory notes of even date herewith due and payable October 1, 1925; one note for five thousand three hundred fifty dollars represents amount owing up to January 19, 1925, including interest to due date; one note for five hundred dollars given for advances made and to be made after January 19, 1925. The note for five thousand three hundred fifty dollars includes the purchase price for land this day deeded to the parties of the second part by party of the first part, and the land described hereinafter is the land so deeded.

"And whereas, said parties of the first part have agreed to secure the payment of said indebtedness, as also, any further amounts that may be advanced as aforesaid and not mentioned herein."

Still later appellant filed its bill in the chancery court of Simpson county against the Martins to establish its

title to the lands involved by virtue of its purchase under the foreclosure of its deed of trust thereon. That cause was tried, resulting in a decree in appellant's favor. From that decree the Martins appealed to the supreme court, where the decree of the court below was affirmea. *Martin* v. *Raleigh State Bank*, 146 Miss. 1, 111 So. 448, 51 A. L. R. 442. The court held, in that case, that when the Martins reacquired title to the lands through the conveyance from appellee, the title so acquired inured to the benefit of appellant by virtue of the warranty in its deed of trust, and the foreclosure thereof and purchase of the lands by appellant at such foreclosure sale, and therefore appellant's title to the lands was superior to that of the Martins, but subject to the rights of appellee's mortgage of February 9, 1925. Appellee was not a party to that cause. Soon after the affirmance by the supreme court of the decree in that case, appellee filed the bill in this case for the foreclosure of his deed of trust of February 9, 1925.

Appellant concedes that appellee has the right to enforce its deed of trust of February 9, 1925, against the lands for the amount of the unpaid purchase money therefor due by the Martins to appellee, but takes issue with appellee that the latter is entitled to enforce it for any amount above the purchase money. And the Martins having been in possession of and farmed the lands during the years 1925 and 1926, and having sold to appellee a large part of the crops raised thereon for those years in payment of their indebtedness to appellee, appellant contends that the Martins were due it a reasonable rental for those years, alleged to be about two thousand dollars, for the payment of which it had a landlord's lien on such crops, and appellee, by such purchase of the crops, having converted the same to his own use, was liable to appellant for such rent to the extent of the crops so converted.

W. P. Kent, by his purchase of the lands at the fore-
closure of the Foreman deed of trust (which was the
senior of the three deeds of trust), acquired title to the
lands freed from the other two deeds of trust. So far
as concerned, therefore, the title to the lands stood as
if the other two deed of trust had never been given there-
on. By Kent's conveyance of the lands to appellee the
later stood exactly in Kent's shoes with reference to the
title thereto. Appellee owned the lands, as did Kent,
entirely freed from the other two deeds of trust. Ap-
pellee was under no obligation whatever to hold or con-
vey the lands with a view of subserving the interest of
either the Martins or the appellant. He was absolute-
ly free to sell the lands to any person he might select, at
any price he might name, provided the person selected
was willing to pay such a price. Appellee chose to sell
and reconvey the lands to the Martins, in consideration
of the sum of five thousand eight hundred fifty dollars.
It is true that the conveyance of the lands from appellee
to the Martins recites a consideration of only three
thousand five hundred dollars "cash in hand." But un-
der the law, the true consideration for the conveyance
may be shown by parol. The principle that parol evi-
dence is not admissible to vary the terms of a written
contract has no application to the consideration recited
in a contract. The consideration for the conveyance of
the lands by appellee to the Martins is not only amply
shown by parol testimony, but, in addition, is shown by
the deed of trust on the lands executed by the Martins
in favor of appellee, which took place on the same day
and as a part of the same transaction as the conveyance.
The deed of trust recites that it was given to secure an
indebtedness of five thousand eight hundred fifty dol-
lars of the Martins to appellee, evidenced by two notes,
payable October 1, 1921, one for five thousand three
hundred fifty dollars, which represented the amount ow-
ing by the Martins to appellee January, 19, 1925, includ-

ing interest, and one note for five hundred dollars, for advances to be made by appellee to the Martins after January 19, 1925. The deed of trust recites, also, that the five thousand three hundred fifty dollar note included three thousand five hundred dollars, which the conveyance from appellee to the Martins set out as the purchase price of the lands. It is true that part of the amount secured by the deed of trust was the sum of one thousand three hundred ninety dollars, with interest, which the Martins were due appellee under the latter's first deed of trust on the lands. However, as we view this question, it is wholly immaterial what value was fixed on the lands by appellee and the Martins at the time of the conveyance by the former to the latter, and the giving of the deed of trust by the latter to the former. Appellee had a perfect title to the lands as against both appellant and the Martins. He had the right under the law to demand of the Martins that they pay him the old indebtedness due by them, and, in addition, the price of whatever supplies he might advance them for farming the lands during the year 1925; and appellee had a right to take a deed of trust on the lands to secure the same; and his rights under such deed of trust were paramount to the rights of appellant under its title acquired at the foreclosure of its deed of trust. As held in *Martin* v. *Raleigh State Bank,* 146 Miss. 1, 111 So. 448, 51 A. L. R. 442, upon the conveyance of the lands by appellee to the Martins, appellant at once, by operation of law, acquired title to the lands. But the question is, what sort of title? Did appellant get any better title than the Martins got by the conveyance from the appellee to them. We think not. And what sort of title did the Martins get? The answer is they got title to the lands incumbered with a mortgage indebtedness of five thousand eight hundred fifty dollars. When the title to the lands left appellee, it left with this incumbrance on it, for the conveyance and the incumbrance constituted one trans-

action. We are unable, therefore, to see how it is material whether the five thousand eight hundred fifty dollars constituted the purchase money of the land or not. It was certainly a valid incumbrance on the lands as between appellee and the Martins. Why is it not also a valid incumbrance as between appellee and appellant? We are unable to see why it is not. The principle of law under which the title of the Martins inured to the benefit of the appellant could give the latter no greater rights than the former. Its operation could not be taken as extinguishing part of appellee's mortgage indebtedness against the lands.

Did appellant, as the owner of the lands during the years 1925 and 1926, have a lien on the agricultural products produced thereon during those years by the Martins, for the reasonable rental value of the lands? We think this question must be answered in the negative, because the relation of landlord and tenant did not exist between appellant and the Martins. Appellant had never been in possession of the lands. The Martins had been in possession, and had title to the lands until the foreclosure of the Foreman deed of trust. It is true, that, during the years 1925 and 1926, as this court held in *Martin* v. *Raleigh State Bank, supra,* appellant had title to the lands as against the Martins. But during those years appellant's claim of title to the lands was being vigorously contested by the Martins. They did not acknowledge appellant's superior title until this court had decided that case in appellant's favor. To constitute the relation of landlord and tenant so as to give the former a lien on the agricultural products produced on the leased premises under section 2832, Code of 1906 (section 2492, Hemingway's 1927 Code), such relation must exist as the result of a contract either express or implied. *Stevens* v. *Moore,* 1 Miss. Dec. 537; *Roberts* v. *Sims,* 64 Miss. 597, 2 So. 72; *Hill* v. *Gilmer* (Miss.), 21 So. 528; *Pennington* v. *Ritchie,* 102 Miss. 133, 58 So. 657;

*Id.,* 100 Miss. 792, 57 So. 220; 35 C. J., section 2, 3, pp. 951, 952. There was no such contract here. The lien given by the statute only exists as the result of the relation of landlord and tenant. It follows that the Martins were free to sell the crops produced on the lands during 1925 and 1926 to appellee in payment of any indebtedness they were due him, whether such indebtedness was secured by a lien of any character or not.

As we understand, the result of these views lead to an affirmance of the decree appealed from.

*Affirmed.*

On Motion to Correct Judgment.

Etheridge, P. J. This motion to correct the judgment heretofore rendered in this case was filed pending the suggestion of error, and is addressed largely to the matters dealt with in the judgment sustaining the suggestion of error in part.

The motion is permaturely filed. A suggestion of error, if sustained, necessarily changes the judgment formerly entered. In the case before us the suggestion of error is sustained, to an extent that materially changes the judgment first entered. The motion will be overruled.

*Overruled.*

Anderson, J. Appellant takes the position in its suggestion of error that applying the principles laid down in the opinion handed down in this case leads to a reversal of the decree appealed from, instead of an affirmance, and, on a reconsideration of the case, we find that to be true.

On February 9, 1925, appellee reconveyed the lands to the Martins, and on the same day, and as a part of the same transaction, took from the Martins a deed of trust on the lands to secure the payment of the amount they

were then due appellee, as well as advances to be made them by appellee for that year. By that transaction the relative rights of appellant and appellee in the land were fixed, and what occurred thereafter could make no change in such rights. By the conveyance from appellee to the Martins the title to the lands went at once, through the Martins, to appellant, incumbered alone by that deed of trust. The indebtedness secured by that deed of trust was five thousand eight hundred fifty dollars, evidenced by two promissory notes, one for five thousand three hundred fifty dollars, and the other for five hundred dollars, both due October 1, 1925. The deed of trust provided for the payment of the two notes, as well as any further advances of supplies and merchandise made by appellee to the Martins on or before October 1, 1925. Therefore by the express terms of the deed of trust it did not secure advances made after the due date of the notes it was given to secure. The title to the lands went, through the Martins, to appellant, freed from any power on the part of the former to mortgage it for other supplies and advances beyond those mentioned in the deed of trust.

It follows that appellee, as against appellant, has a lien on the lands alone for the payment of the balance due on the notes secured by that deed of trust, and, in addition, any other advances made before the due date of such notes. However, in applying the payments made by the Martins to appellee after the execution of the deed of trust of February 9, 1925, such payments for each year should go, first, to the extinguishment of any indebtedness they were due him for supplies and advances for the particular year, and the balance, if any, to the indebtedness secured by that deed of trust. There appears from the record to be some difficulty in making the necessary calculations and application of payments. Probably it could better be done under the direction of the chancery court. Possibly additional testimony may be necessary for that purpose.

The suggestion of error is therefore sustained as herein indicated, and the decree appealed from is reversed, and the cause remanded, for the purpose of enabling the chancery court to enter a decree in accordance with the original opinion in this case, as well as this opinion in response to the suggestion of error; appellant to be taxed with two-thirds of the costs of this appeal, and appellee with one-third.

*Suggestion of error sustained, and the cause remanded.*