McLaurin, et al. *v.* Royalties, Inc., et al.

No. 40501 May 13, 1957 95 So. 2d 105

*John C. McLaurin,* Brandon, for appellants.

*John K. Keyes,* Collins, for appellees.

HOLMES, J.

This is a suit to remove clouds and confirm title insofar as concerns the oil, gas and mineral rights in 40 acres of land in Simpson County described as the NE¼ of the NE¼ of Section 5, Township 2 North, Range 3 East.

The suit was brought in the Chancery Court of Simpson County by the appellees, as complainants below, against Cities Service Oil Company, a corporation, John C. McLaurin, Floyd Herrington and Lizzie Herrington, as defendants below. A settlement of the suit was effected as to Cities Service Oil Company. A general demurrer to the original bill was filed by the remaining defendants, John C. McLaurin, Floyd Herrington and Lizzie Herrington, assigning as grounds for demurrer that no equity appeared on the face of the bill. On the hearing of the demurrer, the chancellor overruled the same and granted to the defendants an interlocutory appeal to the Supreme Court to settle the controlling principles of law. From the chancellor's decree, this interlocutory appeal is prosecuted.

The material allegations of the original bill are the following:

On October 25, 1938, the land in question was owned by Chas. R. Pettis, William S. Pettis, Jr., Mrs. Marguerite P. Patterson, Mrs. Ruth Pettis, Joseph Pettis, Mrs. Ruth P. Patterson and E. W. Pettis, Jr. On said date, October 25, 1938, the above named parties conveyed the land in question to Floyd Herrington by warranty deed reserving all minerals and the right to develop the same

for a period of ten years from the date of the deed and so long thereafter as there was production of oil, gas and minerals from the land. It is without contradiction in the record that no production has been obtained from the land in question.

On July 17, 1944, Floyd Herrington conveyed said land to Maude Herrington and Bessie Herrington as joint tenants with the right of survivorship.

On October 26, 1944, Floyd Herrington executed a quit claim deed to W. S. Pettis, Jr., in which he conveyed *"all my right, title and interest in and to all minerals and the right to develop the same in said land."* (Emphasis ours). This deed was as follows:

"In consideration of One Dollar ($1.00) cash paid and receipt thereof acknowledged, I hereby convey and quit claim to W. S. Pettis, Jr., all my right, title and interest in and to all minerals and the rights to develop in the following describe land, to-wit:

"NE¼ of NE¼ of Section 5, Township 2 North, Range 3 East, in Simpson County, Mississippi.

"Witness my signature etc."

At the time the aforesaid deed was executed to W. S. Pettis, Jr. by Floyd Herrington, the said Floyd Herrington had no interest in the minerals, having previously conveyed the land to Maude Herrington and Bessie Herrington by deed dated July 17, 1944.

On March 22, 1952, Maude Herrington and Bessie Herrington conveyed said land to Floyd Herrington without any mineral reservation.

On July 16, 1953, Floyd Herrington and his wife, Lizzie Herrington, two of the appellants here, conveyed the land to John C. McLaurin, the other appellant here, reserving an undivided 1/16 interest in the oil, gas and minerals, and reciting that such reservation was a non-participating royalty interest reserved unto the grantors.

On July 23, 1954, John C. McLaurin executed an oil,

gas and mineral lease to Cities Service Oil Company covering the said land and providing a ten-year primary term.

The appellees are the successive grantees of and claim through W. S. Pettis, Jr., who was the grantee in the quitclaim deed executed by Floyd Herrington on October 26, 1944. The original bill herein sought to cancel as a cloud upon the asserted title of complainants the deed executed by Floyd Herrington and Lizzie Herrington to John C. McLaurin on July 16, 1953, and also the oil, gas and mineral lease executed by John C. McLaurin to Cities Service Company on July 23, 1954.

The case involves the doctrine of after-acquired title as made applicable to a quitclaim deed by Section 846 of the Mississippi Code of 1942, which section reads as follows:

"A conveyance of quitclaim and release shall be sufficient to pass all the estate or interest the grantor has in the land conveyed, and shall estop the grantor and his heirs from asserting a subsequently acquired adverse title to the lands conveyed."

The appellants contend that inasmuch as Floyd Herrington owned no interest in the property in question on October 26, 1944, when he executed the deed to W. S. Pettis, Jr., conveying all his right, title and interest in the minerals and the right to develop the same, no interest passed by said deed to W. S. Pettis, Jr., since the instrument by its terms does not purport to convey any particular interest or estate and signifies on its face an intent to convey only the present interest of the grantor, and that, therefore, the said Floyd Herrington was not estopped to assert the title which he acquired from Maude Herrington and Bessie Herrington on March 22, 1952, and that his acquisition of such title does not inure to the benefit of the successive grantees of W. S. Pettis, Jr.

The contention of the appellees is that even though it be true that Floyd Herrington had no title to the oil, gas and minerals at the time he conveyed on October 26, 1944, to W. S. Pettis, Jr., "all my right, title and interest," that on acquiring title on March 22, 1952, under the doctrine of after-acquired Title and under Section 846 of the Mississippi Code of 1942, that then and thereby the title to the oil, gas and minerals flowed eo instante into W. S. Pettis, Jr., and thereby into his successive grantees, who are the appellees herein, and that the said Floyd Herrington is estopped to assert his after-acquired title as against the appellees herein.

In the absence of a statute governing the effect of a deed as passing an after-acquired title, the courts are not in agreement. Many courts take the position that only warranty deeds operate to pass after-acquired title. 16 Am. Jur., Deeds, p. 630. The State of Mississippi has, however, by the enactment of Section 846 of the Mississippi Code of 1942, made the doctrine of after acquired title applicable to quit claim deeds. It is definitely settled under the decisions of this Court that the estoppel created by the statute is coextensive only with the estate, right or interest which the conveyance purports to convey. McInnis v. Pickett, et al, 65 Miss. 354; Bramlett v. Roberts, 68 Miss. 325.

In the McInnis case, one William Kirkwood died leaving several children and certain land. Nancy, one of the children conveyed to her brother "all her right, title and interest in the estate of her father deceased." Afterwards a brother and sister, who were co-heirs, died. The brother, who was the grantee of Nancy, sold the land to one Eli, who conveyed it to McInnis. Nancy brought ejectment against McInnis. The court said: "The conveyance by the plaintiff of all her right, title and interest in the estate of her father deceased did not estop her from asserting her title by descent cast

upon her by the subsequent death of a brother or a sister who were co-heirs with her to her father. Any title she might subsequent to her conveyance acquire to the estate which she conveyed would by our statute inure to her grantee, and she could not assert it. *The estoppel is co-extensive with the estate, right or interest which the conveyance purports to pass.* It did not purport to convey an estate which the grantor might at a future day derive by descent from her co-heirs.'' (Emphasis ours)

In the case of Mitchell v. Woodson, 37 Miss. 567, Mitchell and Woodson entered into a contract whereby Mitchell agreed to convey to Woodson ''all the right, title or interest he has of, in or to the premises by quitclaim deed.'' In this case the Court said: ''But in this case Mitchell had covenanted to convey by quitclaim deed such title as he had acquired and then held under the deeds to him of March 1840 and May 1841. It being a contract merely to do a specific thing, he was not bound beyond its terms; and as he was not bound by any covenant of warranty to defend or perfect the title of Woodson he had the right to acquire for himself an independent title; for that would not disable him to perform his contract to Woodson, which was to release to him the title which he had previously acquired.''

The rule adopted by this Court that the estoppel to assert an after acquired title is coextensive with the estate, right or interest which the conveyance purports to pass appears to be recognized by the authorities generally.

In 31 C. J. S., Estoppel, Section 22, page 205, is found the following: ''A conveyance which does not purport to convey any estate and which conveys only a present estate or the right, title and interest of the grantor, passes only such a title as the grantor has at the time of its execution and delivery, and will not operate to confer on the grantee a new and independent title sub-

sequently acquired by the grantor, estoppel being co-extensive with the estate, right or interest which the conveyance purports to convey."

In 16 Am. Jur., Deeds, Sec. 344, page 636, appears the following: "It is well established that a mere quitclaim deed by which the grantor professes to convey only such interest as existed in him at the time of the execution of the instrument, without affirming either expressly or by implication the existence of any estate or interest in himself *does not import that the grantor possesses any interest at all* and is ineffectual either by force of an estoppel or otherwise to pass the grantee any title or right acquired by the grantor subsequently to the execution of such quitclaim deed." (Emphasis ours)

In Patton On Titles, Section 130, page 433, is found the following: "The doctrine does not of course apply to any land or to any interest therein other than that which is called for by the plain import of the conveyance. A conveyance manifestly cannot pass an after-acquired title which is not sufficient in terms to have passed the title at the time it was executed had the grantor then held it. It is equally true that an after-acquired title is not affected by a prior conveyance which purports to convey merely the grantor's present right, title or interest."

In a note to 58 A. L. R., page 360, is found the following: "The general rule is well established that if a deed does not purport by express terms or by implication, to convey a particular estate, but only the grantor's title or interest,—in other words, if the conveyance is merely by quitclaim deed and there are no covenants or recitals showing an intention to convey any definite interest or estate,—the grantor is not thereby estopped from asserting an after acquired title or interest." In support of said annotation, authorities are cited from the Supreme

Court of the United States and from thirty-two States of the Union, including the State of Mississippi.

In the quitclaim deed in question, Floyd Herrington, the grantor, did not either expressly or by implication affirm the existence of any estate or interest in himself and the instrument does not purport to convey any interest other than that vested in the grantor at the time of the execution of the quitclaim deed. Further, there is nothing in the quitclaim deed to indicate any intention on the part of Floyd Herrington to convey any interest that he might subsequently acquire. It is our opinion that the instrument clearly manifests an intention on the part of the grantor to convey whatever interest was vested in the grantor at the time of the execution of the instrument. Since Floyd Herrington had no interest, the instrument conveyed none, and under the doctrine well recognized by the decisions of this Court and the authorities generally that the estoppel is coextensive only with the estate, right or title conveyed, it seems clear to us that the grantor, Floyd Herrington, is not estopped to assert his after-acquired title and that such after-acquired title did not inure to the benefit of the grantee in the deed, namely, W. S. Pettis, Jr. and his successive grantees.

We are accordingly of the opinion that the demurrer of the defendants should have been sustained and that the learned chancellor was in error in overruling it. The decree of the court below is therefore reversed and the cause remanded.

Reversed and remanded.

All Justices concur, except *McGehee, C. J.* and *Kyle, J.,* who took no part.